UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Criminal Action No. 5: 17-002-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| TODD INGRAM | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

"I see nobody on the road," said Alice. "I only wish *I* had such eyes," the King remarked in a fretful tone. "To be able to see Nobody! And at that distance too! Why, it's as much as *I* can do to see real people, by this light!"

Lewis Carroll, Through the Looking Glass and What Alice Found There, (1993 ed.)

The above passage aptly describes the current state of affairs in the federal courts, post-*Johnson* and *Mathis*, in determining what should be clear; that is, what constitutes a violent felony. As discussed below, however, the answer is hardly clear as courts struggle to find the answer under the light cast by the Supreme Court.

The defendant's objections to the Presentence Investigation Report ("PSR") are currently pending for resolution. [Record No. 31] The United States sought an extension of time to respond to the sentencing objections, in light of their complexity. [Record No. 33] The Court granted the extension and provided time for the defendant to reply. [Record No. 35] The undersigned provided notice to the parties including a preliminary discussion of the objections to facilitate resolution of the defendant's objections. [*Id.*] The United States filed a timely response, and the defendant filed a timely reply. [Record Nos. 37 and 38]

The Court will overrule the defendant's objections after considering the parties' arguments. The defendant's conviction on numerous (upwards of ten) counts of Kentucky first-degree robbery, as well as his federal bank robbery and carjacking convictions, qualify violent felonies for purposes of 18 U.S.C. § 924(e). The defendant is an Armed Career Criminal in the truest sense of that phrase.

## I.    Background

In the instant offense, Defendant Todd Ingram pleaded guilty on May 12, 2017, to one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). [Record Nos. 15, 28, 30] As part of his plea agreement, Ingram admitted that on December 13, 2016, ATF agents located in his vehicle a 9 mm handgun, suspected heroin, and digital scales. [Record No. 28 at 2]    Ingram admitted possession of the firearm, and the Kentucky State Police Lab confirmed the suspected heroin to contain heroin, a Schedule I controlled substance, and fentanyl, a schedule II controlled substance. [*Id.*] The United States' agreed to seek dismissal of Count 2 of the Superseding Indictment, charging possession of the controlled substance. [*Id.* at 1]    Also listed in Ingram's plea agreement are the defendant's past convictions. [*Id.* at 4] Ingram was convicted on September 7, 1994, in the United States District Court for the Western District of Kentucky of Bank Robbery, Aiding and Abetting, and use of a Firearm in a Crime of Violence, Aiding and Abetting. [*Id.*] On September 6, 1994, he was convicted in the United States District Court for the Western District of Kentucky of Carjacking, Aiding and Abetting. [*Id.*] On August 19, 1993, Ingram was convicted in Jefferson Circuit Court, Commonwealth of Kentucky, of thirteen counts of Robbery First Degree. [*Id.*] Finally, On January 13, 1993, Ingram was convicted in Jefferson Circuit Court, Commonwealth of Kentucky, of Complicity to Commit First Degree Robbery. [*Id.*] Ingram

does not dispute the fact of these convictions, nor the factual background relating to them as presented in the PSR. [*See* Record No. 31] However, he reserved the right to challenge any Armed Career Criminal designation, and has done so.

The following is a summary of the 13 counts of first-degree robbery to which Ingram was convicted on August 19, 1993. Each count was for robbery committed while armed with a deadly weapon, all occurring in Jefferson County, Kentucky. Ingram's signed state-court plea agreement lists the offenses as "armed robbery." They are as follows:

Count 1: On September 13, 1992, Ingram and two accomplices robbed a Save-A-Step Food Mart on Rockford Lane, Jefferson County, KY, using or threatening use of physical force while armed with a deadly weapon.

Count 2: On September 30, 1992, Ingram and one accomplice robbed a Dairy Mart on Bardstown Road, using or threatening use of physical force while armed with a deadly weapon.

Count 5: On October 9, 1992, Ingram and one accomplice robbed a Dairy Mart on Bardstown Road, using or threatening use of physical force while armed with a deadly weapon.

Count 6: On October 22, 1992, Ingram and one accomplice robbed a Dairy Mart on Barry Avenue, using or threatening use of physical force while armed with a deadly weapon.

Count 7: On November 12, 1992, Ingram and one accomplice robbed a Dairy Mart in the Algonquin neighborhood of Louisville, using or threatening use of physical force while armed with a deadly weapon.

Count 8: On November 13, 1992, Ingram and one accomplice robbed a Shell Food Mart on Floyd Street, using or threatening use of physical force while armed with a deadly weapon.

Count 10: On November 15, 1992, Ingram and one accomplice robbed a Kentucky Fried Chicken on Dixie Highway, using or threatening use of physical force while armed with a deadly weapon.

Count 11: On November 22, 1992, Ingram robbed a Save-A-Step Food Mart, using or threatening use of physical force while armed with a deadly weapon.

Count 13: On November 27, 1992, Ingram and two accomplices robbed a Kentucky Fried Chicken on Preston Highway, using or threatening use of physical force while armed with a deadly weapon.

Count 14:  On November 29, 1992, Ingram and two accomplices robbed a Kentucky Fried Chicken on Dixie Highway, using or threatening use of physical force while armed with a deadly weapon.

Count 15:  On November 29, 1992, Ingram and two accomplices robbed Michael Faulkner, using or threatening use of physical force while armed with a deadly weapon.

Count 16:  On December 2, 1992, Ingram and two accomplices robbed an employee of McDonald's on Hurstbourne Lane, using or threatening use of physical force while armed with a deadly weapon.

Count 17:  On December 2, 1992, Ingram and two accomplices robbed an employee of Hardee's on Shelbyville Road, using or threatening use of physical force while armed with a deadly weapon.

Counts 3 and 4 of the Indictment charge Ingram's accomplice Durand Murrell with not only robbing a Kentucky Fried Chicken Restaurant on October 2, 1992, but also with raping an employee of the KFC restaurant.  Murrell was charged with committing rape by engaging in sexual intercourse through forcible compulsion.

Ingram objects to the PSR's classifying his first degree robbery convictions, bank robbery conviction, and carjacking conviction, as ACCA predicate offenses.  Specifically, he argues that none of the statutes of conviction are categorically crimes of violence.  The Court considers each statute in turn.

## II.      Kentucky First-Degree Robbery

Kentucky first-degree robbery is categorically a violent felony.   The statute, in effect since January 1, 1975, reads:

> (1) A person is guilty of robbery in the first degree when, in the course of committing theft, he uses or threatens the immediate use of physical force upon another person with intent to accomplish the theft and when he:
> (a) Causes physical injury to any person who is not a participant in the crime; or
> (b) Is armed with a deadly weapon; or
> (c) Uses or threatens the immediate use of a dangerous instrument upon any person who is not a participant in the crime.

-4-

(2) Robbery in the first degree is a Class B felony.

Ky. Rev. Stat. ("KRS") § 515.020. "Physical force" is in turn defined as "force used upon or directed toward the body of another person." KRS § 515.010. Second-degree robbery contains the same elements as § 515.020(1), but does not require any of the aggravating factors. *See* KRS § 515.030; Kentucky Crime Commission/LRC Commentary, 1974 ("For conviction of [robbery in the first degree], the prosecution must prove all of the elements of robbery in the second degree, and, in addition, one of three possible aggravating factors.").

On its face, first-degree robbery appears to meet the Armed Career Criminal Act's definition of "violent felony" in that it "has as an element the use, attempted use, or threatened use of physical force against the person of another." 18 U.S.C. § 924(e)(2)(B)(i). In fact, the Sixth Circuit has twice affirmed ACCA enhancements based on Kentucky first-degree robbery convictions. *See United States v. Elliott*, 757 F.3d 492 (6th Cir. 2014); *United States v. Page*, 662 F. App'x 337 (6th Cir. 2016). Perhaps that conclusion is "about as interesting as a prediction that the sun will rise in the east tomorrow." *United States v. Duncan*, 833 F.3d 751, 752 (7th Cir. 2016) (finding Indiana robbery to be a violent felony). So much so, the defendants in *Elliott* and *Page* did not appear to challenge Kentucky first-degree robbery's status as constituting a violent felony. But the defendant here makes no such concession. Instead, he seeks to bank on the "intricate law that has developed around the classification of prior convictions for recidivist sentencing enhancements," hoping to produce a favorable, if "surprising" result. *Duncan*, 833 F.3d at 752.

The defendant objects generally to Kentucky robbery counting as a crime of violence. His objection centers upon the Supreme Court's holding in *Johnson v. United States*, 559 U.S. 133 (2010) (*Johnson I*), that the degree of force required for the use-of-force predicate under

the Armed Career Criminal Act is "violent force—that is, force capable of causing physical pain or injury to another person." *Id.* at 140. The defendant cites *Hatton v. Commonwealth*, 2014-SC-248, 2016 WL 2604806 (Ky. May 5, 2016) (unpublished); along with a couple of century-old cases, *Jones v. Commonwealth*, 66 S.W. 633, 633 (Ky. 1902) and *Stockton v. Commonwealth*, 101 S.W. 298 (Ky. 1907), for the proposition that no more force is necessary to commit Kentucky robbery than the force required to wrench a wallet from an unsuspecting victim's grasp. The Sixth Circuit has suggested that the minimum *actual force* necessary for purse snatching (absent a *threat* of physical injury), is not sufficient to meet the *Johnson I* standard. *United States v. Yates*, No. 16-3997, 2017 WL 3402084, at *4 (6th Cir. Aug. 9, 2017).

In *Yates*, the Sixth Circuit considered the present question—violent felony status—for Ohio robbery. 2017 WL 3402084. The Court held that, because "[a] 'realistic probability' exists . . . that Ohio is applying Ohio Rev. Code Ann. § 2911.02(A)(3) [Robbery] in such a way that criminalizes a level of force lower than the type of violent force required by Johnson [I] . . . Yates's conviction under that statute does not constitute a crime of violence under the guidelines' force clause." *Id.* at *7. Kentucky first-degree robbery is meaningfully different than the Ohio statute at issue in Yates. "The force criminalized by Ohio Rev. Code Ann. § 2911.02(A)(3) is defined as 'any violence, compulsion, or constraint physically exerted by any means upon or against a person.'" *Id*. at *4. For purposes of Kentucky robbery, "'[p]hysical force' means force used upon or directed toward the body of another person." KRS § 515.010. It does not include confinement. *See id*. (Kentucky Crime Commission/LRC Commentary, 1974); *Yates*, 2017 WL 3402084 at *4 (citing *United States v. Eason*, 829 F.3d 633, 641 (8th Cir. 2016) for the proposition that a statute encompassing "[b]odily impact, restraint, or

confinement" falls short, on its face, of *Johnson I* force).  Moreover, Kentucky first-degree robbery requires one of three aggravating factors.  In addition to using or threatening immediate use of physical force, to be guilty of first-degree robbery in Kentucky, one must also "(a) [c]ause[] physical injury to any person who is not a participant in the crime;  or (b) [be] armed with a deadly weapon; or (c) [use] or threaten[] the immediate use of a dangerous instrument upon any person who is not a participant in the crime."  *Elliot*, 757 F.3d at 795 (quoting KRS § 515.020).

The defendant cites *Hatton*, 2016 WL 2604806, *Jones*, 66 S.W. 633, and *Stockton*, 101 S.W. 298, for the proposition that the force required by the Kentucky robbery statute generally ("force used upon or directed toward the body of another person") does not require *Johnson I* force.  However, *Jones* and *Stockton* well-predated the modern statutory scheme, and no aggravating factors were there included in the requirements for robbery.  And the *Hatton* case cited by the defendant did not involve mere purse wresting.  The victim was knocked to the ground and dragged several feet by a car door, sustaining injuries to her head, neck, and torso. 2016 WL 2604806, at *1.  The Kentucky Supreme Court thus affirmed *Hatton*'s conviction for first-degree robbery under the aggravating factor of "[causing] physical injury to any person who is not a participant in the crime."  KRS 515.020(a)(1).  Therefore, whether or not the second-degree robbery version of the statute requires *Johnson I* force, if the aggravating factors require *Johnson I* force, then Kentucky first-degree robbery is categorically a violent felony.

Ingram argues that neither the first or second aggravating factors—causing physical injury or armed with a deadly weapon—require *Johnson I* force.  Regarding the second factor, Ingram points to the statutory commentary stating that "mere possession" of a firearm is

sufficient to satisfy the statute. Regarding the first factor, Ingram argues that mere injury does not mean that *Johnson I* force was used. Ingram does not argue that the third factor—use or threatened use of a dangerous instrument—is insufficient under *Johnson I*.

Regarding possession of a deadly weapon ("armed with a deadly weapon"), the government points to the Sixth Circuit's holding in *United States v. Rafidi*, 829 F.3d 437 (6th Cir. 2016). *Rafidi* held that even if a criminal statute can be met by "physical contact [that] is not in itself 'capable of causing physical pain or injury,'" if it also requires "using a deadly weapon during [the]encounter [it] elevate[s the] lower degree of physical force into 'violent force' sufficient to establish" a violent felony." *Id.* at 446. To this point, Ingram responds that the statute does not require "use" of a deadly weapon, but only "mere possession" of it. Ingram cites both the statutory commentary and *Sasser v. Commonwealth*, 485 S.W.3d 290 (Ky. 2016). However, the defendant cites to no Kentucky caselaw expressly holding that first-degree robbery may be committed by an "unseen, unused deadly weapon." *United States v. Batista*, No. 5:09CR00037, 2017 WL 2841681, at *8 (W.D. Va. June 30, 2017) (analyzing New York first-degree robbery). Perhaps that is because Kentucky caselaw suggests the gravamen of the "armed robbery" subsections of first degree robbery is the existence of a deadly weapon which invokes fear in the victim or the perpetrator's use or threatened use of a dangerous instrument.

In *Swain v. Commonwealth*, 887 S.W.2d 346, 347 (Ky. 1994), the Kentucky Supreme Court noted "[i]n all but one instance of existing case law, the object supporting the first degree robbery conviction was seen by the victim." Moreover, in the "unseen" instance, "the victim testified that a sharp point was pressed against his back, establishing the existence of a weapon or facsimile thereof." *Id.* (citing *Travis v. Commonwealth*, 457 S.W.2d 481 (1970); *Merritt v. Commonwealth*, 386 S.W.2d 727 (1965)).

In 2010, the Kentucky Supreme Court clarified that while a toy gun, for example, cannot count as a "deadly weapon," a non-operational firearm is a "deadly weapon." *Wilburn v. Commonwealth*, 312 S.W.3d 321 (Ky. 2010). *Wilburn* discussed the pre-penal code version of Kentucky first-degree robbery, KRS 433.140, "which enhanced the sentence for a robbery or burglary committed by anyone who 'uses or displays any pistol, gun, other firearm or deadly weapon' in the commission of the offense." 312 S.W.3d at 326. In further extrapolating on the statutory interpretation of the "armed with a deadly weapon" enhancement, the Court made clear that the enhancement is meant for situations where the deadly weapon intimidates the victim. For example, a non-operational firearm is sufficient for statutory purposed because "as a general common-sense rule, the robber seeks only to intimidate the victim into relinquishing his property and avoid actual use of the weapon—he wants to rob, not rob and murder." *Id.* at 328. The Court continued

> Interpreting the language to refer to the individual weapon would create a loophole allowing robbers to gain the decidedly advantageous benefit of pointing an actual pistol at the victim, but allowing him to escape the consequences of the deadly weapon enhancement to first-degree robbery by, for example, simply removing the firing pin or emptying the chamber. In view of this, the legislature could not have intended the phrase "any weapon" to refer to an individual weapon. That, quite simply, is an unreasonable interpretation. The legislation is intended to deter and punish first-degree armed robbery, not coach a robber on how to avoid the charge.

312 S.W.3d at 328-29.

Together with *Swain*, 887 S.W.2d 346, *Wilburn* offers an authoritative interpretation of the "armed with a deadly weapon" enhancement—conduct wherein the victim is intimidated by the presence of a deadly weapon. It is also logical that the statute require *use or threatened use* of a dangerous instrument, but requires only that the defendant be armed with the deadly weapon. A dangerous instrument could include something with a legitimate use, such as a

bottle, so the mere presence of it does not communicate a threat. *See* KRS § 515.030; Kentucky

Crime Commission/LRC Commentary, 1974.[1]

Finally, the defendant argues that proof of physical injury does not equate to use of

*Johnson I* force. He cites numerous statutes supporting what he describes as this logical

fallacy. Further, he points out that first-degree robbery does not have, as an element, intent to

cause injury, and that the "precise cause" of the physical injury is not required. None of these

---

[1] The defendant cites *Sasser v. Commonwealth*, 485 S.W.3d 290, 297 (Ky. 2016), for the proposition that a conviction for first degree robbery does not require proof of a threat, and that possession of a firearm does not constitute a threat under the statute. In a narrow sense, that is correct. *Sasser* was analyzing a defendant's argument that the trial judge erred in not requiring an instruction for the lessor-included offense of third-degree terroristic threatening. *Id.* But because first-degree burglary may be committed by actual use of force, rather than by threatened use of force, a threat is not necessary. The Kentucky Supreme Court reasoned that, because third-degree terroristic threatening requires proof of a threat, while first-degree burglary does not require proof of a threat, third-degree terroristic threatening "is simply a separate, uncharged offense" (rather than a lessor-included offense). *Id.* To be sure, *Sasser* states "[i]n addition to threatening harm, a person may be found guilty of [first-degree robbery] either causing physical injury to someone other than a participant in the crime, or by simply possessing a deadly weapon." As an initial matter, *Sasser* was not deciding the matter at issue here—rather, the defendant conceded that pointing the firearm at the victim was a threat (though he did not apparently threaten to use the firearm). The issue in Sasser was whether there was sufficient evidence of the defendant's intent to commit theft. The defendant, therefore, was attempting to obtain relief for the trial court's failure to provide a lessor-included-offense instruction. Because first degree robbery may be committed by use of force that leads to physical injury, it follows that no threat is required. Therefore, the point of the Supreme Court was only that a threat is not required to commit first-degree robbery, and any gloss on the "mere possession" is dicta. Apart from being dicta, the sentence that Ingram cites, simply cannot be taken at face value because it is in direct contradiction to the statutory language and supporting commentary. As the commentary makes clear, first-degree robbery requires that all of the elements of second-degree robbery be met (in the course of committing theft, [a person] uses or threatens the immediate use of physical force upon another person with intent to accomplish the theft), along with one of the aggravating factors, one of which is possession of a firearm. At face value, the Sasser line suggests that first-degree robbery may be committed by merely possessing a firearm in the course of committing theft. On the contrary, the perpetrator must also use or threaten the immediate use of physical force. Therefore, *Sasser* does not support Ingram's position that a hidden firearm satisfies the statute.

points sufficiently undermine the fact that "causing physical injury to any person who is not a participant in the crime," involves "use" of "force capable of causing physical pain or injury to another person."  KRS § 515.030; 18 U.S.C. § 924(e)(2)(B)(i).

Intent to cause injury is certainly not a prerequisite to the "use, attempted use, or threatened use of physical force."   As the Kentucky Supreme Court pointed out in *Wilburn*, the "the robber seeks only to intimidate the victim into relinquishing his property . . . he wants to rob, not rob and murder." 312 S.W.3d at 328.  Moreover, the defendant's citation to *McNeil v. Commonwealth*, 468 S.W.3d 858, 870 (Ky. 2015), as evidence that the victim's injury need not be caused by the robber is misleading.  *McNeil* was simply distinguishing first-degree robbery from first-degree assault, wherein the latter requires the injury occur from a deadly weapon or dangerous instrument.  Because the physical injury aggravator factor is separate from the deadly weapon and dangerous instrument versions, it follows that those weapons need not be the cause of the injury.

To be sure, in *Hatton*, the victim was injured after being dragged by a car, and the car was driven by an accomplice, not the robber himself.  The Court held that "a mere division of labor between robbers in the commission of the crime does not preclude conviction of each as a principal."  2016 WL 2604806, at *3 (quoting *Commonwealth v. Smith*, 5 S.W.3d 126, 129 (Ky. 1999)).  Given that facilitation of a violent felony is sufficient under federal law to count as a predicate offense, *see United States v. Elliott*, 757 F.3d 492 (6th Cir. 2014), *Hatton's* logic stands up under federal law.

Many of the out-of-circuit cases cited by Ingram do not have, as an element, use of physical force.  He also cited *Villanueva v. United States*, 191 F. Supp. 3d 178, 192 and 196 (D. CT. 2016) which held that Connecticut first-degree assault is not a violent felony, although

it requires proof that the defendant caused serious physical injury, because no physical force of any kind is required to violate the statute. The *Villanueva* court held that the statute could be met by "using emotional force to compel another person to take a cyanide pill, or by distributing anthrax through a building's air conditioning system." *Id.* 192. But that case involved an assault statute, which could be accomplished by use of a substance, and did not require use or threatened use of *physical* force. The Court need not here engage in such wild hypotheticals, detached from reality, because the Kentucky statute requires use or threatened use of physical force coupled with the injury.

In conclusion, Kentucky caselaw establishes that "mere possession" of a firearm means only that the threat need not be explicit. Ingram cannot point to a single case holding that an "unseen, unused deadly weapon" is sufficient to meet the deadly weapon factor. Moreover, because Kentucky law requires, at the very least, physical injury coupled with a use-of-force element, it follows that the aggravating factor of "causing physical injury to any person who is not a participant in the crime," involves "force capable of causing physical pain or injury to another person."

Ingram pleaded guilty to thirteen separate counts of first-degree robbery while armed with a deadly weapon. For purposes of counting predicate offenses, *United States v. Hill*, 440 F.3d 292, 297-98 (6th Cir. 2006), set forth "three indicia" for determining that the offenses may be counted as separate from each other. They are:

> Whether it is possible to discern the point at which the first offense is completed, and the subsequent point at which the second offense begins, 2) whether it would have been possible for the offender to cease his criminal conduct after the first offense, and withdraw without committing the second offense, 3) whether the offenses are committed in different residences or business locations.

*United States v. Barbour*, 750 F.3d 535, 540 (6th Cir. 2014) (quoting *Hill*, 440 F.3d at 297-98) (quotation marks omitted). Clearly, armed robbery of a business ends when the culprit exits the premise, and here the next offense begins when the culprit enters the next place to be robbed. The offenses are largely committed at different business locations. Moreover, with the passage of numerous days between each robbery, Ingram had ample time to cease his criminal conduct. Erring on the side of caution and only counting the robberies that took place with at least a full twenty-four hours in between, and excluding the robberies to the same businesses locations, Ingram has at least eight separate predicate offenses under first-degree robbery.[2]

### III.    Federal Bank Robbery

Ingram's 1994 conviction for bank robbery (aiding and abetting) coupled with use of a firearm in crime of violence (aiding and abetting), is a crime of violence. The federal bank robbery statute under which Ingram pleaded guilty, 18 U.S.C. § 2113(a), is not categorically a crime of violence, because it may be committed by entering a bank intending to commit a felony. The Sixth Circuit has recognized that "'enter[ing] or attempt[ing] to enter any bank ... with intent to commit in such bank ... any felony affecting such bank' . . . could certainly encompass many nonviolent felonies." *United States v. McBride*, 826 F.3d 293, 296 (6th Cir. 2016).

---

[2]    Coupling counts 1 and 11 (possibly same business), 2 and 5 (same business), 7 and 8 (may be less than 24 hours apart), 10 and 14 (same business, though count 14 could also be coupled with count 15 for the same date, but both scenarios lead to count 14 being effectively excluded), 16 and 17 (same date) results in eight total offenses.

However, review of numerous pattern jury instructions suggest plainly that bank robbery committed by entering a bank intending to commit any felony is considered a different offense. For example, the model criminal jury instructions for the district of South Carolina call that version of 2113(a) "Bank Burglary." D.S.C. Pattern Jury Instr. 18 U.S.C. § 2113. And the Ninth Circuit model criminal jury instructions dictate a separate wording for the first element of the offense where that version is charged. Ninth Cir. Model Crim. Jury Instr. 8.162.

The first version of § 2113(a), under which Ingram pleaded guilty, may be committed by "force and violence, or by intimidation" or "by extortion." Ingram does not deny that "force and violence" is a violent felony. He does, however, challenge that intimidation and extortion may not be. The caselaw, however, is clear. Extortion is an enumerated offense under ACCA. And intimidation, as nearly all of the model jury instructions make clear, requires that an objective person would fear bodily harm. *United States v. Gilmore*, 282 F.3d 398, 402 (6th Cir. 2002). [3] Causing an objective person to fear bodily harm meets the *Johnson I* definition of force.

---

[3] According to *Gilmore* "Whether intimidation under 18 U.S.C. § 2113(a) exists in a particular case is determined by an objective test: whether an ordinary person in the teller's position could reasonably infer a threat of bodily harm from the defendant's acts." Numerous other circuits apply the same standard. For example, the Eight Circuit Model Jury Instructions state "Intimidation means doing something that would make an ordinary person fear bodily harm." Eighth Cir. Model Jury Instr. 6.18.2113A (citing Ninth Cir. Crim. Jury Instr. 8.35.1 (1997); 2B Kevin F. O'Malley, *et al.*, Federal Jury Practice and Instructions: Criminal § 57.10 (5th ed. 2000); *United States v. Brown*, 412 F.2d 381 (8th Cir. 1969). According to the Eleventh Circuit Pattern Instructions "'Intimidation' occurs 'when an ordinary person in the teller's position reasonably could infer a threat of bodily harm from the defendant's acts." *United States v. Kelley*, 412 F.3d 1240, 1244 (11th Cir. 2005). 'Whether a particular act constitutes intimidation is viewed objectively.' *Id*. The defendant need not intend for the act to be intimidating. *Id*." Eleventh Cir. Pattern Jury Instr. O76.2.

The defendant pleaded guilty to robbing a bank "with force and violence and by intimidation," and he pleaded guilty to possessing a firearm while committing a crime of violence, the crime of violence being the bank robbery. Accordingly, because the federal bank robbery statute is divisible between the force and violence/intimidation/extortion version and the "intent to commit a felony" version, and because the indictment and judgment make clear that Ingram was convicted of the former version (and pleaded guilty to using a firearm in doing so), this conviction counts as an ACCA predicate.

## IV.     Federal Carjacking

Lastly, federal carjacking is also a crime of violence. As existing at the time of his conviction, federal carjacking required that the defendant, while "possessing a firearm" took a motor vehicle "from the person or presence of another by force and violence or by intimidation." 18 U.S.C. § 2119 (Oct. 25, 1992). For the same reason described previously that under federal law, intimidation requires that a reasonable person would fear for the physical safety, the version of the carjacking statute in effect in 1992—force and violence or intimidation while armed with a firearm—is a violent felony. Ingram's objection regarding a criminal history point for carjacking will also be overruled.

## V.     Base Offense Level

Ingram's final objection to the PSR regards his base offense level. Ingram argues that because he does not have a prior felony conviction for a crime of violence, his base offense level under USSG §2K2.1 should be 12. As described herein, Ingram has numerous past felony crime-of-violence convictions, and therefore his base offense level is appropriately calculate as 20 under USSG §2K2.1(a)(4)(A).

## VI.  Conclusion

Unlike in *Yates*, the Court does not find a "realistic probability" that Kentucky applies its first-degree robbery statute "in such a way that criminalizes a level of force lower than the type of violent force required by *Johnson I*."  Because Ingram has well-more than three prior Kentucky first-degree robbery offenses, he qualifies as an Armed Career Criminal.

Being sufficiently advised, it is hereby

**ORDERED** that Defendant Todd Ingram's Objections to the Presentence Investigation Report [Record No. 31] are **OVERRRULED**.

This 25th day of August, 2017.

Signed By:

*Danny C. Reeves*

United States District Judge